1. Under an indictment for robbery by force and intimidation the accused was convicted of the offense of robbery by force, a capital felony, the jury fixing his punishment at not less than four years and not more than six years. A writ of error complaining of the judgment overruling the defendant's motion for new trial was transferred to this court by the Court of Appeals. The statute fixing the punishment for robbery by force (Ga. L. 1937, pp. 490, 491; Code, Ann. Supp., § 26-2502) imposes the death penalty unless the jury recommends mercy. The Constitution of this State, article 6, section 2, paragraph 4 (Ga. L. 1945, pp. 8, 43), gives exclusive jurisdiction to this court of writs of error in all "cases of conviction of a capital felony." The jurisdiction is determined, not by what punishment is actually imposed, but according to whether or not a conviction is had "of a capital felony." Hence, this court, and not the Court of Appeals, has jurisdiction of the present writ of error. Mika
v. State, 196 Ga. 473 (2) (26 S.E.2d 616).
2. The evidence authorized the verdict finding the accused guilty of the offense of robbery by force.
Judgment affirmed. All the Justicesconcur.
 No. 15488. JUNE 5, 1946.
 STATEMENT OF FACTS BY DUCKWORTH, JUSTICE.
Claude C. Birdell was tried and convicted of the offense of robbery by force, the jury fixing his punishment at not less than four years and not more than six years, under an indictment charging him with robbery by force and intimidation. The defendant's motion for new trial, solely on the usual general grounds, was overruled, and the defendant excepted. There was evidence on the trial of the case substantially as follows:
Horace Sinclair testified: He was working for the Gate City *Page 786 
Barber Shop and had been working there for 26 years and lived at 580 Johnson Avenue in Fulton County, Georgia. He got home about 1 o'clock on the night of May 19, 1945. He left with an important package to deliver to his cousin who lived around the corner, a distance of about a block and a half from where he lived. He got around the corner, going from Johnson into Randolph, and saw two gentlemen walking slowly down the street in front of him. The witness was walking fast because he wanted to deliver the package and go home and go to bed. One of the men was tall and the other short. When he got close to them the tall one said to the short one, "Look out, there is a fellow behind you." There were only three in the street. He went to pass the tall fellow, who turned and snatched the right arm of the witness and had his arm around the neck of the witness. He caught the witness in the collar and said: "This is a holdup. You better not scream." The short fellow came behind him and put his hand in the witness's pocket and took his pocketbook. At the same time the tall fellow had him in the collar and was cursing. The short fellow turned and left. The tall fellow turned and said to the witness, "All right, God damn you, get down the street." The witness went to a step-off, and the tall fellow kicked him in the base of the spine and turned him loose. The witness had $120 in the pocketbook. He broke a five-dollar bill and he had two dollars and something left in his pockets. He ran to his cousin's where he was supposed to go with the package. He was in pain and sat down and called the police and detectives. They came and went over the neighborhood but saw no one. They took the witness to the station house and made a report, and the witness left and went home. The defendant is the fellow that held him that night. When the witness next saw the defendant, it was at least five days afterwards. The witness was sitting on the porch and he asked a fellow on the porch the name of the defendant, who was coming up the street, and the witness was told. The witness wanted to be sure. He saw the defendant a third time before he called the police and had him arrested. There is no doubt in the mind of the witness that the defendant is the man who held him. The witness did not get his money back. He never gave that money to the defendant or anybody else. The place where he was held up is in Fulton County, Georgia. The robbery took place on *Page 787 
Houston Street, and the witness judges it was about a block and a half from where he lived. He made a statement at the police station. He never said to the judge in respect to the defendant, "I am not sure whether that is him or not." He has not changed the statement and is saying now what happened. The defendant called the witness's name at the station house, and the witness was surprised. He never saw the defendant in the barber shop until after this happened. He never had a "rucus" with the defendant. He might know a girl named Tires if he could see her face, but not by name. He has seen "this little girl back yonder before." He has been told that she was Birdell's wife, but was never introduced to her. He does not know where the defendant lives or lived at the time of the robbery.
George Williams testified: He has been knowing the defendant all his life and saw him on Saturday night, May 18, at the Greyhound bus station. The defendant came up and spoke to the witness. A lady was with him when the witness saw him. He didn't see anybody else with him. He was talking to the lady and said, "Hello, George." The witness works there. It was after 12 because the witness does not go to work until 12. The time is an hour faster and was after 12 by bus time. The witness has not stated that he saw the defendant with a little short man. He does not know about any short man. He does not know what time it was, but after 12 because the witness does not go to work until 12 and the time is faster than the old time. He had been at work about an hour. It was supposed to be 11 o'clock when he went to work. Sinclair has asked the witness if he knew the defendant, and this was when he gave the witness a subpoena to come to court. Sinclair has not tried to get the witness to do anything but come and tell what time of night the witness saw the defendant at the bus station. It was Saturday night when the witness saw him in May, and immediately after that he heard that Sinclair was robbed. He did not remember talking to officer Cowan and telling him that the witness saw the defendant and a little short boy come to the bus station. He never told Sinclair that.
I. G. Cowan testified: He is a detective with the City of Atlanta. He arrested the defendant. He questioned him about being at the bus station that morning and he denied it, denied being there with anybody. He asked him, if he was at the bus *Page 788 
station the morning, the time, Sinclair was robbed. The defendant never admitted that he robbed Sinclair. The witness did not remember that the first thing that Sinclair told the recorder was that he was not sure whether the defendant was the man or not. Sinclair never did say that. The witness arrested the defendant, and Sinclair picked him out of the line and said he would stake his life on it that he was the one. The witness would not swear that he, the witness, was in the recorder's court, but knows what Sinclair said about it. He never had occasion to investigate anything in connection with the defendant that happened on the 11th. The day the defendant was arrested the witness did not know who he was.
Ernest Dixon testified: He knew Horace Sinclair and the defendant, and had seen them around each other often, but did not know whether or not they knew each other. He had seen them around the Smoke Shop, and knew they had seen each other.
The defendant made a statement substantially as follows: His wife went to Sinclair's barber shop to get her hair cut and her eyebrows arched. More than once Sinclair approached her with a question about going out with him for money for immoral purposes. She told the defendant the first time when he came home from the army. He went to Sinclair and said: "You have a wife of your own. Let my wife alone." After the defendant went to work in the army service depot, she went to the barber shop expecting to get her eyebrows arched, and Sinclair embarrassed her before some of her friends by offering her money to go out with him. The defendant went and asked him about it, and he got angry and came out second best in a good fist fight. On the night Sinclair said he was robbed, which was May 19, George Williams saw the defendant at the bus station with a young lady who was going to McDonough, Georgia. When Mr. Cowan asked the defendant if this was Friday night, May 11, the defendant said, "No." He asked if the defendant knew the short fellow that was with this man, and he said, "No." After Sinclair told Judge Callaway he was not sure, the judge started to turn him loose, and that was when this man said he positively identified him and said he was the one. On the way back upstairs Mr. Crankshaw told the defendant: "I have got my doubts about this case. I still would like to have these witnesses and have them in court." *Page 789 
The defendant stated to the jury that he was not guilty. He further stated that, on the night in question, a young lady sitting in the courthouse invited the defendant's wife and himself to their house for a little party. He got to the house approximately between 7:30 and 8 o'clock, and did not leave there until a little after 2 o'clock. He caught a cab and went to the bus station so that the sister of his hostess could catch a bus to McDonough, Georgia, and waited until 3:15. He talked to her until the bus left. That was when he saw Williams. He was working then. When the defendant went home that Sunday evening, he saw Sinclair. He was out with a fellow named Son Burden at the corner of Randolph and Houston. The defendant had been knowing Burden about ten years. He lived within a block of the defendant, just a block and a half, and every day Burden saw the defendant. The defendant had been in his barber shop to get his hair cut, and a little short man that shines shoes knows the defendant.